Irving Roy and Esther Roy v. Commissioner.
Roy v. Commissioner
Docket No. 2486-65.
United States Tax Court
T.C. Memo 1968-99; 1968 Tax Ct. Memo LEXIS 200; 27 T.C.M. (CCH) 475; T.C.M. (RIA) 68099; May 27, 1968. Filed Samuel S. Saiber, Gerald P. Seid, for the petitioners. Frank N. Panza, for the respondent. FEATHERSTON Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' income taxes as follows: Year
Deficiency
1959
$2,704.54
1960
7,612.27
1961
3,834.63
*201 The issues presented for decision are: 1. Were the amounts of $7,000, $24,849.80, and $15,000 paid by the Ramrod Gravel Company in the taxable years 1959, 1960 and 1961, respectively, pursuant to a lease agreement between Ramrod and Roy's Modern Enterprises, Inc., taxable income to Irving and Esther Roy, or were these amounts 476 properly includable in the income of Roy's Modern Enterprises, Inc.? [1]
2. Are the petitioners entitled to deduct $600 allegedly incurred as travel, gas and oil expenses in taxable year 1959, and $181.55 allegedly incurred as travel expense in taxable year 1961? 3. Were the amounts of $800, $200 and $100 paid by Roy's Modern Enterprises, Inc. to petitioners in the taxable years 1959, 1960 and 1961, respectively, taxable income to petitioners, or do such amounts represent reimbursements to the petitioners for amounts they expended on behalf of Roy's Modern Enterprises, Inc.? 4. Are *202 the petitioners entitled to deduct $2,500 paid by them to Roy's Modern Enterprises, Inc. in taxable year 1959 purportedly for rent, secretarial and telephone expenses? Findings of Fact Some of the facts have been stipulated and are so found. The stipulations and exhibits thereto are incorporated herein by this reference. Petitioners, husband and wife, were residents of Lakewood, New Jersey, at the time of filing of the amended petition herein. They filed timely joint Federal income tax returns for 1959-1961, inclusive, with the district director of internal revenue at Camden, New Jersey. Irving Roy was 68 years of age at the time of the trial and has been retired since 1955. He has devoted his time principally to his investments and has not actively engaged in any business since he retired. Roy's Modern Enterprises, Inc. (hereinafter referred to as "Roy's" or "the corporation"), is a corporation organized under the laws of New Jersey on February 14, 1956, by Irving Roy, Esther Roy and Morris Roy. Twelve shares of capital stock were issued to the incorporators in exchange for $1,200, and 74 shares of capital stock were issued to Irving Roy and Esther Roy in exchange for 6 *203 parcels of land and the premises thereon. The stock was initially issued as follows: Irving Roy
60 shares
Esther Roy
25 shares
Morris Roy 1 share
Total
86 shares
Prior to the incorporation of Roy's, Irving Roy (hereinafter "petitioner") had contracted to acquire a parcel of land on Massachusetts Avenue in Dover and Lakewood Townships, Ocean County, New Jersey. He assigned the contract to Roy's, which acquired the parcel on March 21, 1956. In addition, Roy's acquired two contiguous parcels of land on June 1, 1956 and July 19, 1956. The three parcels comprised approximately 250 acres of unimproved land and are referred to hereinafter as the Massachusetts Avenue property. The closing statement for the purchase of these parcels indicates a purchase price of $41,540.72. Petitioner loaned to Roy's the necessary moneys to purchase the properties. After the corporation had acquired the Massachusetts Avenue property, commercially exploitable sand and gravel reserves were discovered. On January 4, 1957, the right to extract the sand and gravel was granted to the Monmouth Trucking Co. (hereinafter "Monmouth"), of Eatontown, New Jersey. The agreement was for an initial *204 term of six months with five successive annual renewal periods. Monmouth extracted sand and gravel from the Massachusetts Avenue property until September of 1958, at which time it relinquished its right to extract sand and gravel from the property. The lease to Monmouth was obtained through the efforts of Charles E. Hamerman (hereinafter "Hamerman"), a licensed real estate broker who died in 1965. The petitioner personally guaranteed Hamerman's commission of $1,200 a year and the corporation agreed to reimburse the petitioner for this expense. The terms of the lease with Monmouth provided that the lessee should pay rent in the amount of $4,000 for the right to remove the gravel for the first six months of the term, and the sum of $12,000, to be paid in advance, for each succeeding twelve-month period. The rent set forth was to be construed as a base rental, with the true rental computed at the rate of fifteen cents for each cubic yard removed. After the lessee removed 80,000 cubic yards, it was to pay, in addition to the base rental, fifteen cents per cubic yard for each additional cubic yard removed. The $12,000 was to constitute a guaranteed minimum rental to the lessor. 477
*205 In early 1957, petitioner learned that an improved tract of land was being offered for sale in Burlington County, New Jersey, near the expected site of a proposed jetport. At that time, petitioner did not have sufficient funds to purchase the property. On the suggestion of Hamerman, and after discussion with petitioner's attorney and his accountant, it was decided that the corporation should transfer to petitioner title to the Massachusetts Avenue property to be used as security to obtain funds. At a Special Meeting of the Board of Directors of Roy's held on June 12, 1957, the corporation resolved to transfer the Massachusetts Avenue property to petitioner "for a total credit to the corporation of $42,180.72 against money previously owed by the corporation, to Irving Roy and Esther Roy, his wife." The corporation further resolved: * * * that this corporation for its transfer of the property enter into a lease with the said Irving Roy and Esther Roy his wife, for the use and occupancy of said premises for a term of four years at a total rental of $4,800 payable $1,200 each year. Said lease shall be under and subject to a certain agreement of lease entered into on January 15, 1957 between *206 this corporation and Monmouth Trucking Company. By deeds dated June 14 and June 21, 1957, bearing the notation "NO STAMPS REQUIRED," the corporation transferred the Massachusetts Avenue property to petitioner in fee simple. The deeds were recorded in the Ocean County Clerk's office. On July 12, 1957, petitioner entered into an agreement purporting to lease to Roy's the property he had acquired from it for four years at an annual rental of $1,200. This was the amount petitioner had guaranteed to pay Hamerman, the real estate broker. The lease was not recorded in the Ocean County Clerk's office. The deeds dated June 14 and June 21, 1957 together with the lease of July 12, 1957 were integral parts of a single transaction and were in substance, as between petitioner and the corporation, transfers of legal title to petitioner with reservation in the corporation of the rights conferred by such lease. After Monmouth relinquished its rights to extract sand and gravel from the Massachusetts Avenue property in September 1958, the corporation entered into a new lease with the Ramrod Gravel Co., Inc. (hereinafter "Ramrod"). The lease granted Ramrod the right to remove 85,000 cubic yards *207 of sand and gravel material annually for $12,000 and to remove additional sand and gravel in excess of the 85,000 cubic yards guaranteed minimum at a cost of fifteen cents per cubic yard. This lease commenced October 31, 1958 and was for two years with options to renew for five additional one-year terms. The Ramrod lease was also obtained through Hamerman. On November 1, 1960, Ramrod entered into a new lease with Roy's for a three-year term which was renewable for two years. This lease contained essentially the same terms as the lease referred to in the preceding paragraph. Petitioner, Hamerman, Morris Roy and Murray Glass purchased an unimproved tract of land of approximately 1,000 acres in Burlington County, New Jersey on December 6, 1957. The tract was in the general vicinity of a proposed jetport site. Petitioner did not use the Massachusetts Avenue property as security to obtain the necessary funds. On July 12, 1961, petitioner extended the corporation's right to remain in possession of the Massachusetts Avenue property by executing a new lease for an additional four-year term at an annual rental of $1,200. All gross rentals on the Massachusetts Avenue property from June 12, 1957 through *208 December 31, 1961, were paid to Roy's and were not reported by petitioner in his income tax returns for those taxable years. The stipulated amounts received for the years in issue were as follows: 1959
$ 7,000.00
1960
24,849.80
1961
15,000.00
Petitioner paid and deducted the real estate taxes on the Massachusetts Avenue property from 1958 through 1961. In his notice of deficiency, respondent determined that the gross rentals received by Roy's from Ramrod were properly taxable to petitioner, and increased his gross income by the amount of the rentals. In his tax return for 1959, petitioner deducted $600 for travel, gas and oil expenses. In his tax return for 1961, petitioner deducted $181.55 for travel expenses. Although petitioner traveled on both personal and corporate business during 1959 and 1961, he did not keep detailed records of his expenses, and not all of his automobile expenses were incurred for business purposes. 478 Petitioner is entitled to deduct the amount of $150 for 1959 and $150 for 1961 for travel and automobile expenses. For the years 1959, 1960 and 1961, Roy's paid petitioner the amounts of $800, $200, and $100, respectively. During *209 these years, petitioner made certain expenditures for the corporation, including Christmas gifts. Of the amounts paid by the corporation to petitioner, the amount of $50 in each year represents reimbursement of petitioner by the corporation. On his tax return for 1959, petitioner deducted $2,500 for rent, secretarial and telephone expenses. Petitioner made a payment to Roy's on December 23, 1959, by check No. 367, in the amount of $2,500. The check bears the following notation on its reverse side: "[For] rent in advance for office-etc-from Jan 1st to the end of Dec 31st 1960-m." This figure was arrived at by allocating one-third of all corporate expenses to petitioner. The building wherein Roy's offices were located had seven other offices therein and four stores in the downstairs portion. Roy's tried to rent the offices but was able to rent only one office and two stores. The reasonable value of the services rendered by the corporation in 1960, including use of corporate premises for personal business, was $900. Opinion Issue 1, Rental Income In 1956, petitioner formed a corporation, Roy's Modern Enterprises, Inc. (Roy's), and transferred to it contracts for the purchase *210 of certain real estate. The corporation then proceeded to acquire such property and other contiguous properties for approximately $42,000 loaned to it by petitioner. Thereafter it was discovered that the land contained exploitable gravel reserves, and early in 1957 the corporation entered into a lease with Monmouth Trucking Company (Monmouth), wherein Monmouth agreed to exploit the reserves for a minimum guaranteed rental of $16,000 in 1957. A few months after the Monmouth lease agreement was signed, petitioner learned of an investment opportunity in Burlington County, New Jersey. Petitioner was short of liquid assets, however, and he believed that he would need the property held by the corporation as security for borrowings to acquire the needed funds. He therefore caused the corporation, in June 1957, to transfer the property to him in exchange "for a total credit to the corporation of $42,180.72 against money previously owed" by the corporation to him. Contemporaneously with the transfer of the property to petitioner, he entered into a "lease" with the corporation whereby he purportedly "leased back" the property to the corporation for $1,200 per annum, this being the amount he *211 was obligated to pay the real estate broker who had handled the initial purchase and the Monmouth lease. Monmouth Trucking Company and, subsequently, Ramrod Gravel Company, continued to remove sand and gravel material from the property, and remitted the amounts due under their lease to the corporation. Respondent determined that these rents were taxable to petitioner rather than the corporation. The correctness of this determination is the first issue for decision. Both parties agree that up until June 1957, the corporation was the owner and lessor of the gravel properties. As such, the income from the lease was taxable to it. The disagreement concerns the effect of the transfer of the title to the gravel properties to petitioner. Respondent contends that the corporation transferred to petitioner all its interest in the gravel properties, including the rights under the Monmouth lease, and that the income from the subsequent Ramrod lease is properly taxable to petitioner. Petitioner, relying on corporate minutes and other indicia, contends that the transaction was intended to be only a transfer of the properties to petitioner for his use as security to obtain funds for the prospective *212 investment and that, in substance, the corporation, as between it and petitioner, reserved the right to the gravel income. On the one hand, we have the testimony of petitioner, which we believe, that his purpose was to obtain the property for use as security. Petitioner is not a lawyer or an accountant; the people who drafted the documents are deceased. On the other hand, we have the documents which formally transferred the land in fee including the right to rents, and shortly thereafter leased the land back to the corporation. Moreover, at least some of the expenses of ownership were paid by the petitioner rather than the corporation, including the real estate taxes and the expense of drawing the Ramrod lease. Standing alone, the deeds were sufficient to constitute the petitioner the lessor of the 479 Monmouth lease without the attornment of the tenant. N.J. Stat. Ann., tit. 46, sec. 3-8. But the deeds do not stand alone. Petitioner contemporaneously, in what we find to be a part of a single transaction, leased the property back to the corporation at a rental necessary to pay only the commission to Hamerman which had previously been guaranteed by petitioner but for which he *213 had been reimbursed by the corporation. By the contemporaneous lease petitioner revested in the corporation the right to the rents under the gravel lease. In substance, the transaction was the same as if the deeds themselves had incorporated the terms of the lease as a reservation. Cf. McCulley Ashlock, 18 T.C. 405 (1952). That this was, and was intended to be, the substance of the transaction is demonstrated by the fact that Roy's, [party] not petitioner, was named the lessor in the subsequent Ramrod leases. Respondent contends that the transactions were a tax avoidance sham "to prevent the petitioner's receiving taxable income, and to have that income shifted to a related party [Roy's] which would pay little or no tax due to its operating losses." True, the transactions were handled by petitioner's accountant and lawyer but, if their motive were tax avoidance, they would have been better off doing nothing. Before the transactions, the corporation was undisputably taxable on the Monmouth lease income. The transactions served only to cloud the issue. Respondent, however, would fragment what was clearly intended to be a unitary set of transactions by viewing the *214 giving of the deed as a transaction separate and unrelated to the lease by petitioner to the corporation. What respondent requests is the application of a reverse of the step transaction theory, treating the last step as if it were the complete transaction. This we must decline to do. "The taxpayer as well as the Government is entitled to the benefit of the rule that the substance rather than the form of a transaction controls." Frank Ciaio, 47 T.C. 447, 457 (1967); cf. John A. Decker, 32 T.C. 326 (1959), affd. 286 F. 2d 427 (C.A. 6, 1961); Helvering v. New Haven & Shore Line Ry. Co., 121 F. 2d 985 (C.A. 2, 1941), affirming a Memorandum Opinion of this Court, certiorari denied 315 U.S. 803 (1942). Issue 2. Travel Expenses In his tax returns for 1959 and 1961 petitioner deducted the amounts of $600 and $181.55 as travel expenses. Respondent disallowed the claimed deductions. As to the amount claimed in 1959, petitioner testified that he did not keep detailed records of his expenses, but that he traveled extensively on behalf of his personal investments and on behalf of the corporation. As to the deduction claimed *215 for 1961, the parties have stipulated that this amount was paid to a service station for automobile repairs. While petitioner's testimony was general in nature, it is not seriously questioned that he did travel for business purposes. It is also clear that the $181.55 was expended by petitioner in 1961 for repair of his automobile. However, since the repair needs of the automobile may also be attributable in part to wear and tear caused by driving for personal use, and since most of petitioner's traveling was local in nature, we think that an amount of $150 for 1959 and a like amount for 1961 is a reasonable estimate of petitioner's deductible expenses under section 212. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Issue 3. Reimbursed Expenses For the years 1959, 1960, and 1961, the corporation paid petitioner the amounts of $800, $200, and $100, respectively. Respondent has included the amounts in petitioner's income for those years. Petitioner claims these amounts represent reimbursement for Christmas gifts and other expenses incurred by him on behalf of the corporation. At trial, petitioner testified that he never spent more than $350 on Christmas gifts, *216 and that he did not know what his accountant (who prepared the tax returns) had in mind when he made the specific allocations. He testified that he made gifts to a number of people in the community, including four employees of a bank, certain post office employees, garbage collectors, etc. Insofar as corporate business purpose, or, indeed, any business purpose, was shown, or the sort of any specific gifts, the evidence is scanty. However, the testimony is undisputed that some expenditures were made for corporate purposes. Using our best judgment, and bearing heavily against the petitioner who failed to keep records, we have determined that the amount of $50 for each year represented reimbursement of the petitioner by the corporation. Cohan v. Commissioner, supra.The balance of the additions to petitioner's income by respondent is sustained. 480 Issue 4. Office Expenses On his tax return for 1959, petitioner deducted $2,500 as rent, secretary and telephone expense which he paid to the corporation. He testified that this figure was arrived at by his accountant as approximately one-third of the corporation's office expenses. Petitioner asserts that he maintained *217 an office at the corporate headquarters where he received phone calls and sometimes used the services of corporate employees for his private investments. Thus, he claims the deductions are allowable under section 212 as expenses incurred for the production of income. Respondent argues that petitioner was not obligated to pay rent, and that, in any event, the amount purportedly paid as rent and other expenses was unreasonable in light of the value to petitioner. Respondent contends this was simply a device to shift petitioner's income to the corporation. Petitioner used only a portion of one office in an eight-office building where only one office was rented. There was no testimony as to the frequency of phone calls, the amount of secretarial services, or direct relationship of corporate utilities expense to petitioner's office. Nor is it clear that petitioner's office was used solely for personal investments, and that none of the use was for corporate benefit. While we are unwilling to say that petitioner was not required to compensate the corporation for noncorporate use of the facilities, we must agree with respondent that petitioner has failed to prove that one-third of all *218 expenses deducted by the corporation was a proper amount. Once again, using our best judgment, we find that $75 per month would be reasonable in light of the services performed by the corporation for petitioner's personal business use of the corporate facilities. Respondent's determination, to the extent of $1,600, is sustained. In light of our decisions on the various issues herein, Decision will be entered under Rule 50. Footnotes
1. By amended answer, respondent invoked section 482, I.R.C. 1954↩, to allocate the corporate income to petitioner. However, no argument concerning its applicability was made at trial or on brief, and we have treated the issue as abandoned.